` IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LISA MARIA BARNES )  | |
| ) | |
| v. ) | NO. 3:04-1036 |
| ) | |
| MONTGOMERY COUNTY, TENNESSEE ) | |

**MEMORANDUM**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties in this action have consented to have the Magistrate Judge conduct any and all further proceedings in the action and the action has been transferred to the Magistrate Judge for all further proceedings, including entry of final judgment. See Docket Entry Nos. 5 and 9.

Presently pending before the Court is the defendant's motion for summary judgment (Docket Entry No. 14). Also before the Court are the plaintiff's response and the defendant's reply. For the reasons set forth below, the defendant's motion is granted and this action is dismissed.

**I. BACKGROUND**

The plaintiff filed this action on November 18, 2004, against Montgomery County, Tennessee, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Tennessee Human Rights Act ("THRA"), T.C.A. §§ 4-21-101 et seq. The plaintiff alleges that she was the victim of gender discrimination and retaliation and seeks relief under these two acts.

The Montgomery County Sheriff's Department employed the plaintiff as a deputy sheriff beginning in May 1999. She was promoted to rank of corporal in October 2001, and remained in that position until she was terminated from employment with the Sheriff's Department on November 19, 2003. Montgomery County Sheriff Norman Lewis made the decision to terminate the plaintiff's employment. The reason given for the termination was that the plaintiff was involved in an incident

with a prisoner at the Montgomery County Jail on September 12, 2003, during which she was alleged to have used excessive force.

On April 6, 2004, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Tennessee Human Rights Commission asserting that she had been subjected to discrimination based on her gender and as a form of retaliation. See Attachments to Complaint (Docket Entry No. 1). She attached a narrative of events that occurred at the Sheriff's Department as the particulars of her charge. Id. Thereafter, the plaintiff received a right-to-sue letter, dated November 18, 2004.

In her complaint, the plaintiff alleges the following claims of gender discrimination against the defendant for events which occurred at the Sheriff's Department:

> 1) she was forced to take maternity leave;
>
> 2) she was passed over for various job positions, shift hours, and transfers for which she was qualified but male counterparts were allowed overtime and transfers;
>
> 3) her requests to transfer to a court security deputy position were denied but male counterparts were allowed to transfer;
>
> 4) she was not given an appropriate uniform to wear during her pregnancy and upon her return from maternity leave.

See Docket Entry No. 1 at 2, ¶ 7. She further alleges that her termination was motivated by the defendant's desire to discriminate against her because of her gender and to retaliate against her for complaining about gender discrimination. Id. at ¶ 8. By an amended complaint filed January 7, 2005, the plaintiff added a claim that her termination was also motivated by a desire to retaliate against her because of a worker's compensation claim she filed after she was injured during the September 2003, incident with the jail inmate. See Docket Entry No. 8 at ¶¶ 1-2.

## II. SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issues of material fact exist and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979). In considering a

2

Case 3:04-cv-01036   Document 40   Filed 01/19/06   Page 2 of 14 PageID #: 703

motion for summary judgment, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id., at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

**III. ANALYSIS OF PLAINTIFF'S CLAIMS**

The defendant raises several arguments for dismissal of the plaintiff's claims. First, it contends that several of the claims raised by the plaintiff are time-barred. Second, it contends that there is insufficient evidence to support the plaintiff's claims of disparate treatment regarding shift hours, transfers, overtime, and uniform issues. Third, the defendant argues that its decision to terminate the plaintiff's employment was supported by a legitimate, nondiscriminatory reason and that the plaintiff has not offered sufficient proof of pretext to require that this case be submitted to a jury. Finally, the defendant contends that there is no evidence supporting the plaintiff's claim that retaliation was a factor in the termination decision.

3

The plaintiff's response focuses entirely on her wrongful termination and retaliation claims and does not address any of the defendant's arguments regarding the other claims. In fact, the plaintiff states that "the events preceding that date [the date of the incident with the jail inmate] are of only collateral interest." See Plaintiff's Memorandum in Opposition (Docket Entry No. 21) at 5. With respect to the wrongful termination and retaliation claims, the plaintiff contends that the record before the Court shows the existence of genuine issues of material fact which must be resolved by the trier of fact.

### A. Claims Other Than The Termination and Retaliation Claims

The Court views the plaintiff's failure to address these claims in the response in opposition and her reference to events which predate the September 12, 2003, incident as being "of only collateral interest" as significant and, essentially, an abandonment of all of the claims in this action except for her wrongful termination and retaliation claims. The plaintiff's failure to address these claims may be due to the fact that the claims warrant dismissal for several reasons.

Analysis of the plaintiff's Title VII claims begins with the charge of discrimination filed by the plaintiff. The timely filing of an EEOC charge of discrimination is a prerequisite to a Title VII suit. See 42 U.S.C. § 2000e-5(e)-(f); Puckett v. Tennessee Eastman Company, 889 F.2d 1481, 1486-88 (6th Cir. 1989). A party must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory practice. 42 U.S.C. § 2000e-5(e); Amani v. Oberlin College, 259 F.3d 493, 498-99 (6th Cir. 2001).[1] Claims that are not initially presented to the EEOC are generally foreclosed from being brought in a subsequent Title VII lawsuit. Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992).

The plaintiff's charge of discrimination was not filed until April 6, 2004. As the defendant correctly points out, events occurring more than 300 days prior to this date cannot form the basis for

---

[1] Because Tennessee is a "deferral state" for the purposes of federal discrimination statutes, the plaintiff is permitted 300 days within which to file a charge of discrimination. See Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 375-76 (6th Cir. 2002).

4

a timely claim of discrimination. Given the fact that the plaintiff took maternity leave from the Sheriff's Department in November 2002, see Deposition of Lisa Barnes, Docket Entry No. 17-3 at 58, her claims that she was forced to take maternity leave and that she was not given an appropriate uniform to wear during her pregnancy are clearly time barred.

It is further apparent that two other allegations made by the plaintiff relating to events which occurred before her termination cannot form the basis for timely claims. In the charge of discrimination, the plaintiff alleged that, "before the July 2003 incident, I had previously been denied the position which was given to a male applicant." See Exhibit A to Complaint. In her deposition, the plaintiff testified that the event to which she referred occurred in July of 2002. See Deposition of Lisa Barnes, Docket Entry No. 17-2 at 33. The plaintiff also alleged in her charge of discrimination that Captain Tackett told her that there were "a lot of oldtimers . . . who would never accept a female being over them" and appeared to be "trying to discourage me from applying for a supervisory position." See Exhibit A to Complaint. In her deposition, the plaintiff explained that this conversation occurred prior to her promotion to the rank of corporal, which was in October 1991. See Deposition of Lisa Barnes, Docket Entry No. 17-4 at 93. Thus, the events forming the basis for any claims based on these allegations occurred well beyond the 300 day time period, and any such claims are untimely.

Review of the plaintiff's charge of discrimination also reveals that some of the claims asserted by the plaintiff in her complaint were not a part of the charge of discrimination presented to the EEOC. In the complaint, the plaintiff generally alleges that "she was passed over for various job positions, shift hours, and transfers for which she was qualified but male counterparts were allowed overtime and transfers" and "her requests to transfer to a court security deputy position were denied but male counterparts were allowed to transfer." See Complaint at 2, ¶ 7. The charge of discrimination, however, sets out only two instances when she was rejected for a job position or transfer: the untimely claim for the July 2002, denial of a position addressed supra and a request made by the plaintiff in July or August of 2003, to be moved to an open position as a courtroom

5

security deputy. See Exhibit A to Complaint. The charge of discrimination makes no other allegations pertaining to the denial of other job positions, shift hours, transfers, or requests for overtime hours. As such, the Court finds that the general claims made in paragraph 7 of the complaint that gender discrimination occurred regarding job positions, shift hours, transfers, and overtime are limited to the factually specific instances of discrimination contained in the charge of discrimination.

Thus, other than the plaintiff's wrongful termination and retaliation claims, the only claims alleged in the complaint which were timely filed and included within the charge of discrimination are the plaintiff's claim that she was not provided with an appropriate uniform following her maternity leave and her claim that her application for the courtroom security deputy position was rejected in July or August of 2003.[2]

The uniform claim warrants summary dismissal. In her deposition, the plaintiff admitted that, upon her return from maternity leave, Lt. Somers offered to order her new uniforms after she returned to work. See Deposition of Lisa Barnes, Docket Entry No. 17-3 at 65-66. See also Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket Entry No. 28) at ¶¶ 49 and 51. The plaintiff has not presented facts to support this claim.

The plaintiff's remaining claim is that she applied in July or August of 2003, for an open position in the courthouse security division. She was interviewed for the position but the position was ultimately given to the only other applicant for the position, a male in the Sheriff's Department named David Brown. See Deposition of Lisa Barnes, Docket Entry No. 17-4 at 111-18. The plaintiff contends that she was discriminated against because of her gender when she was not given the position.

---

[2] The Court notes that, in her statement of disputed material facts, the plaintiff sets forth several examples of comments made by Sheriff's Department employees to which she apparently took offense or which she believes were sexist or offensive. See Docket Entry No. 20-1 at ¶¶ 1, 5, 6, and 9. The plaintiff has not alleged a hostile workplace claim in her complaint and, even if she had, such isolated comments would not be sufficient to support such a claim.

Summary judgment should be granted to the defendant on this claim. The plaintiff does not dispute that a transfer to the courthouse security position would have resulted in a loss of rank, pay, and benefits. See Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket Entry No. 28) at ¶ 60. As such, the plaintiff cannot show that the denial of her request to transfer created a materially significant disadvantage to her working conditions. Thus, the plaintiff cannot show that she suffered an adverse employment action because of the defendant's action and cannot satisfy her prima facie case under Title VII. See Mitchell v. Vanderbilt University, 389 F.3d 177, 183 (6th Cir. 2004) (plaintiff could not establish that he suffered a materially adverse employment action based upon his non-selection for a position which offered no increase in salary, responsibility, or benefits); Williams v. R.H. Donnelly, Corp., 368 F.3d 123, 128 (2nd Cir. 2004) (employer's denial of a voluntary transfer request that would have resulted in a reduction in pay and a demotion within the organization did not constitute an adverse employment action).

### B. Retaliation Claims

The defendant is entitled to summary judgment on the plaintiff's claims that she was terminated in retaliation for engaging in protected activity under Title VII and for pursuing a worker's compensation claim. Even when given the most generous reading, there is simply insufficient evidence before the Court to support either claim. No reasonable trier of fact could find in favor of the plaintiff based on the evidence before the Court.

A prima facie case for a claim that a plaintiff was terminated in retaliation for filing a worker's compensation claim requires the plaintiff to establish that:

1) she was an employee of the defendant at the time of the injury;

2) she made a claim against the defendant for worker's compensation benefits;

3) the defendant terminated the plaintiff's employment; and

4) the claim for worker's compensation benefits was a substantial factor in the defendant's motivation to terminate the plaintiff's employment.

See Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993).

7

In order to satisfy the substantial factor element, the plaintiff must show more than the mere facts of her employment, the filing of her claim, and a subsequent termination. See Thompson v. Better-Bilt Aluminum Products, Inc., 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992). There must be evidence of a causal link, either in the form of direct evidence or compelling circumstantial evidence, between the filing of the worker's compensation claim and the plaintiff's discharge. Id.; Reed v. Alamo Rent-A-Car, Inc., 4 S.W.3d 677, 685-86 (Tenn. Ct. App. 1999). The plaintiff has presented no evidence which satisfies this burden.

Similarly, to establish a retaliation claim under Title VII, the plaintiffs must prove:

1) she engaged in an activity protected by Title VII;

2) the exercise of protected rights was known to the defendant;

3) the defendant thereafter took adverse employment action against her or she was subjected to severe or pervasive retaliatory harassment by a supervisor, and

4) a causal connection existed between the protected activity and the adverse employment action or harassment.

See Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000); Johnson v. Department of Health and Human Serv., 30 F.3d 45, 47 (6th Cir. 1994). The plaintiff has failed to present evidence supporting her claim. She asserts that she made a written complaint in August 2002, to Sheriff Lewis about sexists and racist comments made by Sgt. Dion. See Deposition of Lisa Barnes, Docket Entry No. 17-2 at 11 and 13 and Exhibit 1. However, her complaint about Sgt. Dion preceded the termination by approximately fifteen months. There is no close temporal relationship between the two events, and no other type of evidence which shows a causal link between her termination and her complaint about Sgt. Dion's comments. The plaintiff's only support for the claim of retaliation is her subjective opinion that her termination was motivated by a desire to retaliate against her. See Deposition of Lisa Barnes, Docket Entry No. 17-4 at 104. Such evidence is simply insufficient to support such a claim. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990); Locke v. Commercial Union Ins. Co., 676 F.2d 205, 206 (6th Cir. 1982).

### C. Wrongful Termination Claim

The defendant does not dispute that the plaintiff has made a prima facie case for a wrongful termination claim under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting line of cases. Instead, the defendant contends that it has set forth a legitimate, nondiscriminatory reason for the decision to terminate the plaintiff's employment and, thus, has met its burden of production to rebut the plaintiff's prima facie case. McDonnell Douglas, 411 U.S. at 802.

The defendant's articulated reason for its decision is that the plaintiff used excessive force during the incident on September 12, 2003. The Court agrees that this is a legitimate and non-discriminatory reason for the employment action at issue. Accordingly, the defendant has satisfied its burden of production.

The burden then falls upon the plaintiff to show by a preponderance of the evidence that "the legitimate reasons offered by the [defendant] were not its true reasons, but were a pretext for discrimination." See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff must produce sufficient evidence from which the trier of fact may reasonably reject the defendant's explanation of the reason for the termination decision and infer that the defendant intentionally discriminated against her. St. Mary's Honor Center, 509 U.S. at 519. To establish pretext, the plaintiff can show: 1) that the defendant's proffered reason has no basis in fact; 2) that the proffered reason did not actually motivate the defendant's decision; or 3) that the proffered reason was insufficient to motivate the termination or, in other words, was never used to terminate an employee. See Smith v. Chrysler Corp., 155 F.3d 799, 805-06 (6th Cir. 1998); Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083-84 (6th Cir. 1994).

The plaintiff argues that summary judgment cannot be granted because genuine issues of material fact exist regarding the incident that occurred on September 12, 2003, and whether or not the plaintiff in fact used excessive force against the inmate. In support of her position, the plaintiff

9

points to: 1) discrepancies in the reports of witnesses to the event; and 2) facts which could call into question the credibility of some of these witnesses, the Sheriff's Department employee who conducted the investigation, and Captain Tackett, one of the captains who made the recommendation to Sheriff Lewis to terminate the plaintiff's employment. In essence, the plaintiff contends that summary judgment is not appropriate because of the factual questions surrounding the incident and because issues of credibility, perception, and belief were involved in the internal investigation and the termination decision. The plaintiff argues that these are issues which must be decided by the trier of fact at trial.[3]

The plaintiff's argument is unpersuasive, and the Court finds that the plaintiff has not shown that genuine issues of material fact exist on the issue of pretext which are sufficient to warrant the denial of summary judgment. The legal principle of a defendant's "honest belief" in the reason set forth for the termination decision controls this case. As the Sixth Circuit held in <u>Braithwaite v. Timken Co.</u>, 258 F.3d 488 (6th Cir. 2001):

> the plaintiff must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action.

258 F.3d at 493-94.

In order to determine whether the defendant had an "honest belief" in the basis for the plaintiff's termination, the Court looks to whether the defendant has established its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. <u>Id.</u>; <u>Smith v. Chrysler</u>, 155 F.3d 799 (6th Cir. 1998). In <u>Smith</u>, the Sixth Circuit provided guidance in determining whether reasonable reliance was present:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the

---

[3] The Court notes that the plaintiff in her memorandum in opposition makes reference to the depositions of several individuals. <u>See</u> Docket Entry No. 21 at 7-10. For virtually every one of these references, however, the Court was not provided with copies of the actual deposition testimony to which the plaintiff referred.

10

> employer made a reasonably informed and considered decision before taking an adverse employment action.

155 F.3d at 807.

The undisputed evidence before the Court shows that Sheriff Lewis was the ultimate decisionmaker in the termination decision and that his decision to terminate the plaintiff's employment was made after an internal investigation had been conducted regarding the incident and after a recommendation had been made to him by the three member Captain's Review Board ("CRB"). The facts before Sheriff Lewis were that an incident involving the use of force against an inmate occurred on September 12, 2003, in which the plaintiff was involved. The inmate later complained of being repeatedly kicked by the plaintiff and requested assistance to file a criminal charge. See Docket Entry No. 17-15 at 11-12, 16-17, and 19. Sheriff Lewis requested that Captain Bowers conduct an internal investigation into the matter and responsibility for the investigation was assigned by Captain Bowers to Sergeant Smith. See Bowers Affidavit (Docket Entry No. 17-20). Sgt. Smith reviewed all applicable reports and paperwork, conducted six interviews, and issued his report on November 6, 2003. See Docket Entry Nos. 17-15, 17-16, and 17-17.

The results of the investigation were not conclusive as to the actions taken by the plaintiff. Two witnesses stated that the plaintiff kicked the inmate several times and four stated that they did not see the plaintiff kick the inmate. Id. One witness who did not see the plaintiff kick the inmate stated that the plaintiff admitted to him that she had kicked the inmate. See Docket Entry No. 17-7 at 12. As part of the filings in the instant action, the plaintiff admits that she kicked the inmate "one time to break the chokehold." See Docket Entry No. 23, at ¶ 3. See also Plaintiff's Amended Response to Local Rule 8(b)(7) Statement (Docket Entry No. 28 at ¶ 77). The Incident Report filed by the plaintiff regarding the matter, however, did not refer to her kicking the inmate in any manner. See Docket Entry No. 17-16 at 53-54. The plaintiff, who was a supervising officer at the time of the incident, became very emotional immediately afterwards to the point of crying and made a statement that she "lost it." See Plaintiff's Amended Response to Local Rule 8(b)(7) Statement

11

(Docket Entry No. 28 at ¶ 76). Other witnesses verified her agitated state during and after the incident. See Docket Entry No. 17-17 at 9, 12, 16, and 22.

The investigation results were forwarded to the CRB which made a written recommendation to Sheriff Lewis on November 13, 2003, that the plaintiff's employment be terminated. See Docket Entry No. 17-7. The CRB reported as follows:

> A review by the Captains Review Board of the Internal Investigation case conducted on the actions of Corporal Lisa M. Barnes, resulted in the following findings and recommendation:
>
> 1. Corporal Lisa M. Barnes began her employment with this Department on May 4, 1999. Since her employ, there is one letter of reprimand in her personnel file.
>
> 2. That on September 12, 2003, an incident occurred in the Blue Wing of the jail involving Henry J. Crawley, Jr.. Crawley had thrown water on the floor and deputies decided to remove him from the Blue Wing and transfer him to the Pink Wing. An altercation began with Crawley and Deputy P. Smith. Crawley was able to take Deputy Smith to the floor and was on top of him with his arm around the deputy's neck. Deputy Mattison was with Deputy Smith at this time and immediately attempted to pull Crawley off of Smith, this not working, Mattison sprayed Crawley with Freeze +p. Additional deputies were alerted and responded to the scene of the incident.
>
> 3. Corporal Barnes was one who responded to the scene with Deputy Williams and Nims. CPL Barnes assisted in pulling inmate Crawley off of Deputy Smith and was observed striking Crawley in the head with her fist in an effort to have him release his hold on Deputy Smith. After Deputy Smith was freed, Barnes was observed kicking Crawley a number of times.
>
> 4. Deputies at the scene had to restrain Corporal Barnes to keep her away from Crawley. She broke away from the Deputies and again got to Crawley, who was still on the floor, where she again began to kick him. Corporal Barnes was again restrained and removed from the cell.
>
> 5. Deputies involved in this incident, (sic) observed the use of excessive force by their supervisor, Corporal Barnes, where she lost her self control and allowed anger to dictate her actions in this situation.
>
> 6. After the incident, Corporal Barnes was visibly shaken and did in the presence of other deputies admit that, "She lost it."
>
> 7. In the initial incident report filed by Corporal Barnes, the kicking of Inmate Crawley along with the re-entry and second kicking incident was omitted. No supplemental report was prepared accounting the kicking incident.
>
> 8. Self control is a requirement needed in the treatment of inmates and fellow employees. It is evident that Corporal Barnes lost control of the situation on September 3rd (sic) and then used unnecessary/excessive force on Inmate Crawley.

12

>Her statement, "I lost it." indicates that she was aware that she was out of control of the situation.
>
>9. Acting and having the position of supervisor, one must set the proper example of actions necessary to quell problems that occur during a shift. It is unacceptable for a supervisor to act in a manner that could bring discredit on our department, particularly in front of those she is training and supervising.
>
>On the (sic) September 13, 2003, Corporal Barnes exhibited a lack of self control and used what is considered excessive force in the handling of inmate Henry Crawley. Actions of this nature cannot and will not be tolerated by this Department. As there is no means, either through training or supervising to regulate a persons self control, we cannot be sure that Corporal Barnes will be able to control her actions in the future.
>
>After reviewing the above facts it is the finding of the Captains Review Board that Corporal Barnes should be terminated from employment with the Montgomery County Sheriff's Department.

See Docket Entry No. 17-7.

While the plaintiff is certainly entitled to disagree with the ultimate employment decision made by Sheriff Lewis to terminate her employment, merely taking issue with the soundness or reasonableness of an employer's business decision is not sufficient to establish gender discrimination. See Wilkins v. Eaton Corp., 790 F.2d 515, 531 (6th Cir. 1986). The incident in question was not conjured up by the defendant, and the undisputed facts before the Court clearly show that Sheriff Lewis had particularized facts before him which could reasonably be relied upon to support his decision. The decision was clearly made after the Sheriff had requested facts about the incident via an internal investigation, obtained those facts, and reviewed those facts prior to reaching his decision. There is absolutely no evidence before the Court from which it could even be inferred that the decision made by Sheriff Lewis was arbitrary, suspicious, or otherwise indicative of an invidious desire to discriminate against the plaintiff because she is a woman.

A theme which appears to underlie the plaintiff's response in opposition to the motion for summary judgment but which is not expressly articulated is that the internal affairs investigation was a ruse and that there was a conspiracy to develop evidence through the internal affairs investigation in order to justify terminating the plaintiff's employment. The Court finds absolutely no support in the evidence before the Court for such a conclusion. As noted above, the underlying incident in

13

question was not concocted but did in fact occur. The investigation clearly revealed evidence that could lead to the conclusion that the plaintiff did kick the inmate, did become emotional, and did make statements to the effect that she "lost it." Witnesses testified that the plaintiff kicked the inmate, admitted to kicking the inmate, or looked as if she were going to kick the inmate.

Further, the internal affairs investigation was not directed solely at the plaintiff but was instead a dual pronged investigation into complaints of excessive force which had been made against the plaintiff <u>and</u> against a male Sheriff's Department employee, Deputy Cassidy Mattison. <u>See</u> Docket Entry No. 17-15 at 3. Sheriff Lewis testified that Deputy Mattison was also terminated and that he believed it was for using excessive force. <u>See</u> Deposition of Lewis (Docket Entry No. 18-3) at 97. Additionally, the undisputed evidence shows that at least one other male employee was terminated from employment with the Sheriff's Department because of allegations of excessive force, based on an unrelated incident or incidents. <u>Id</u>. at 96.

Based upon the evidence which is before the Court, no reasonable jury could find in favor of the plaintiff on her claim that she was terminated from her employment as a result of gender discrimination.

### III. FINAL CONCLUSION

For the reasons set out above, the Court finds that genuine issues of material fact do not exist in this action and that summary judgment should be granted to the defendant as a matter of law.

An appropriate order shall be entered.

_____
JULIET GRIFFIN
United States Magistrate Judge

14